# GOLDSMITH, FORCHEIMER & CO. *vs.* PICARD.

[ACTION ON THE CASE TO RECOVER DAMAGES FOR THE WRONGFUL AND VEXATIOUS SUING OUT OF AN ATTACHMENT.]

1. *Amendment of declaration not revisable on error.*—The amendment of the declaration after issue joined, but before the cause is submitted to the jury, is discretionary with the primary court, and consequently not revisable on error.

2. *Refusal to strike out immaterial averments in declaration works no injury.*—The refusal to strike out immaterial averments, or matters which are stated in the declaration only by way of inducement, is not a reversible error, since the plaintiff could derive no advantage from them, nor could the defendant be thereby prejudiced.

3. *Loss of credit and business as a merchant may be averred.*—One of the natural consequences of suing out an attachment against a merchant, on the ground of fraud, would be to injuriously affect his credit and business; such injuries, therefore, form a legitimate ground of recovery in an action on the case, and may be averred in the declaration.

4. *Depositions will not be suppressed because they were taken before the amended declaration was filed.*—The fact that depositions were taken before the amended declaration was filed, is not a sufficient reason for their suppression, when no specific objection is made to them, and it is not shown that the issue was substantially varied by the amendment.

5. *Admissibility of parol evidence to explain illegible figures in record.*—Where the date of an attachment is illegible, two figures having apparently been written and blended together, the testimony of the clerk who issued the writ is admissible, in connection with it, to show that the wrong date had been first written by the attorney, and that he had corrected it.

6. *Relevancy of evidence tending to show defendant's instrumentality in the levy of the attachment.*—Evidence of the fact that one of the defendants agreed, if another creditor (whose attachment was first in the hands of the sheriff) would yield the preference to their attachment, that he would find property belonging to the plaintiff on which the attachment might be levied, and on which it was subsequently levied, is relevant and admissible for the plaintiff, as tending to show that said defendant was instrumental and active in causing the attachment to be levied; and being admissible for this purpose, its admission by the court for another purpose is not a reversible error.

7. *Admissibility of a prior attachment, sued out by another creditor and levied on the same goods.*—Although the defendants, who are sued as partners, cannot be held responsible for the separate act of one partner in procuring the levy of another attachment in favor of another creditor; yet where the attachment on which the action is founded, by the sheriff's return thereon endorsed, shows that the goods had been first taken under the other attachment, the plaintiff may show that the goods levied on were more than sufficient to satisfy that attachment, and may introduce the attachment and levy for this purpose.

Goldsmith, Forcheimer & Co. v. Picard.

8. *Evidence of plaintiff's general credit and reputation, when admissible—Specific objection to evidence.*—Evidence of the plaintiff's general credit and reputation, *it seems*, is not admissible for him in case to recover damages for the wrongful and vexatious suing out of an attachment, until it has been assailed ; but where the record shows that his general reputation was put in issue by the evidence, he may offer evidence to sustain it ; and if the defendant wishes to object to the testimony of the witness, on the ground that his evidence shows that he is not qualified to testify to the fact in question, he must make a specific objection to it on that ground.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

ACTION ON THE CASE by Isaac Picard against appellants, to recover damages for the wrongful and vexatious suing out of an attachment against him, on the ground that he had moneys liable to satisfy his debts which he fraudulently withheld. The original declaration contained two counts, the first of which averred the suing out of the attachment, its levy, &c., and then proceeded,—"And plaintiff avers that said writ of attachment was wrongfully and vexatiously sued out against him, and without probable cause, and that thereby, and by reason of the proceedings which were had thereupon, he sustained great damage in his business, and in his reputation as a business man, and in consequence thereof lost much of his custom and profits in business, and his goods were sacrificed and disposed of for much less than their true value," &c. The second count averred, "that said defendants, maliciously, and without probable cause, and to vex and harass plaintiff," sued out another attachment against him, which was levied on certain goods in his possession, which were taken by the sheriff and were never returned to him ; "whereby plaintiff sustained great injury, not only in the loss of his said goods, but by loss in his business, his profits, his customers, and reputation as a business man," &c. To this declaration the defendants pleaded, in short by consent, not guilty, with leave to give in evidence any matter in mitigation of damages.

The plaintiff afterwards asked leave to amend his declaration ; to which the defendants objected, "on the ground that they have taken the proper issue upon the original declaration filed in said cause, and have prepared their defence with a view to that issue, and are now prepared for the trial of

the same." The defendants declining to withdraw their former plea, the court then ordered that said plea be stricken out, and that plaintiff have leave to amend his declaration; and an amended declaration was accordingly filed.

The first count of the amended declaration alleges, "that plaintiff was engaged in the mercantile business in the county of Mobile, and had committed no act of fraud whatever, nor contemplated any fraud or fraudulent conduct towards any of his creditors, and was not liable or subject to have any writ of attachment issued against his estate, but was held in great regard, reputation, and credit among his neighbors and all other persons with whom he had dealings; all which the said defendants well knowing, but falsely, wrongfully, and maliciously intending to aggrieve and oppress plaintiff, and to make him be regarded as insolvent, dishonest, and unworthy of credit, did, on", &c., "wrongfully and vexatiously make, or cause to be made, an affidavit in substance as follows," &c. (here the affidavit is copied;) "and thereupon, then and there, did, wrongfully, vexatiously, and maliciously cause a writ of attachment to be issued," &c. The attachment is then set out at length, and it is averred that said defendants, "wrongfully, vexatiously, and maliciously caused it to be executed by the sheriff," &c.; "by means whereof, to-wit, of the suing out of said attachment and the proceedings thereon had, the said plaintiff lost his credit and reputation as a merchant, with and among his neighbors and acquaintances and all other persons with whom he had business transactions, was greatly wounded and injured in his feelings, lost the use, benefit, and advantage of his aforesaid business, and was forced wholly to abandon it, and has been wholly broken up and injured in his circumstances."

The second count contains, substantially, the same allegations as the first in regard to the plaintiff's credit and standing as a merchant, the making of the affidavit, the issue and levy of the attachment, &c., and then proceeds—"By means whereof, the said plaintiff lost all his credit and reputation among his neighbors and acquaintances and all other persons with whom he had business dealings, and has lost the use, benefit, and advantage of his aforesaid business, and has been wholly broken up and ruined; and was also subjected to

great injury to his feelings, and to great loss, expense, and litigation by divers other writs of attachment against his estate, which were sued out by divers other creditors in consequence of the premises, to-wit," (setting out the names of the other attaching creditors;) " and did also suffer great loss by the sale at auction of the goods attached.for less than their value, and was also subjected to further great loss and expense and costs by divers writs of garnishment issued and executed upon his debtors, whereby debts due to him were attached," &c.

The defendants moved to strike out from the first count of this amended or substituted declaration, " as impertinent, as surplusage, and because they do not constitute causes of damage in this suit, the following allegations, to-wit, the affidavit contained therein ; also, all the allegations based upon and referring to said affidavit or cause of complaint; also, the averment of loss of credit and reputation as a merchant with and among his neighbors and acquaintances and all other persons with whom he had business transactions ; also, the averment that he was greatly wounded and injured in his feelings ; also, the allegation that he lost the use, benefit, and advantage of his aforesaid business ; also, the statement that he was forced to abandon his business ; also, the statement that he has been wholly broken up and ruined in his circumstances ; and also to strike out the whole of the second count of said substituted declaration on the same grounds as above stated."    The court overruled this motion, and the defendants then demurred to each count of the declaration, assigning the following grounds of demurrer to each—viz., " 1st, that the same is insufficient in law to authorize a recovery against defendants ; 2d, that it sets out an affidavit, and relies upon the same as a subject or cause of damage ; 3d, that the said affidavit is not shown to have any connection with the attachment complained of, as it is not stated to have been the affidavit made to procure said attachment ; 4th, that said affidavit, if it was the affidavit made to procure the attachment complained of, was made in a judicial proceeding, and cannot be made the foundation of an action."    An additional ground of demurrer to the second count was stated—to-wit, " that plaintiff therein sets forth, as special damage, facts and

circumstances as the result of the issuance of the attachment complained of, which are not the necessary, natural, or proximate consequence of plaintiff's attachment--viz., 'great loss, expense, and litigation by divers other writs of attachment against his estate, and further great loss, expense, and costs by divers writs of garnishment issued and executed upon debtors of plaintiff's'." The court overruled the demurrer to each count, except as to the last ground of demurrer to the second count, which was sustained.

The defendants then moved to suppress the several deposi· tions on file, on the ground that they were taken under the issue made up at a previous term upon the original declaration, and before the filing of the substituted declaration ; but the court overruled their motion, and they then pleaded not guilty.

On the trial, the plaintiff offered in evidence the affidavit and attachment which were the foundation of the action, and which were dated the 25th or 26th September, " the figures 5 and 6 being blended together, and one written over the other" ; and then introduced as a witness the clerk of the court, by whom the writ was issued, and who testified, " that the dates of said affidavit and attachment were intended for the 25th September, that the attorney had by mistake written 26th, and that he corrected the error by writing the true date. The defendants objected to said affidavit and attachment going to the jury, alleging that the same varied from the plaintiff's writ and declaration ; and they also objected to the testimony of the said clerk, on the ground that it disputed, or tended to dispute, the record of said attachment suit. But the court overruled defendant's first objection, and permitted the said record of the attachment suit to go to the jury, and also overruled defendant's second objection, and permitted the testimony of said clerk to go to the jury ; and defendants thereupon excepted."

Plaintiff then introduced as a witness one Webb, who as deputy sheriff had levied the attachment, and who testified, " that before said writ of attachment came to the hands of the sheriff, he went to Morrison (one of the defendants) and stated to him that one Manuel Forcheimer had issued an attachment against the estate of said Picard, and that he (Morrison) had

better place defendant's attachment also in the hands of the sheriff; that said Morrison replied, that said Manuel had not acted rightly towards defendants in having his attachment first levied,—that he (Manuel) had agreed with him (Morrison) that if he (Morrison) would find out goods to be levied on, and point them out to the sheriff, that defendants' attachment should take precedence of his (said Manuel's); that said Manuel admitted to said Morrison, in the presence of witness, that such was the understanding between them, and said that the agreement should be carried out. To the admission of said Webb's testimony as to the reply of said Morrison (the previous part of his testimony not having been objected to) the defendants objected; but the court overruled the objection, and permitted the said reply of Morrison (as detailed by Webb) to go to the jury, and at the same time remarked, in the hearing of the jury, that said testimony might be proper for the consideration of the jury on the question of malice; and thereupon defendants excepted to the allowance of said testimony as evidence in this case. Plaintiff's counsel stated, during the time said Webb was giving the above testimony as to the reply of said Morrison, that the same was offered for the purpose of showing a combination between said Morrison and defendants to vex and harass said Picard."

"Plaintiff's counsel then offered in evidence the writ of attachment, and the sheriff's return thereon, in connection with the aforesaid testimony of said Webb, who further stated, in answer to an interrogatory by plaintiff, that said Morrison pointed out to him the goods which were endorsed as levied on under said attachment of Manuel Forcheimer. Defendants objected to said Manuel's attachment going to the jury, and also to said last-mentioned testimony of said Webb; but the court overruled their objection, and they excepted."

"Plaintiff then introduced as a witness one Dickinson, who testified, that he had known said plaintiff some nine or ten months before said 25th September, 1852, the day on which said attachment was issued; that said plaintiff resided in Athens, Alabama, and did business there as a merchant; that he bought his goods in Mobile; that his reputation as a merchant was good in Mobile; that his (witness') knowledge of said Picard's reputation about that time was derived from

inquiry ; that his inquiries had not been general, but were sufficient to satisfy him that he knew said Picard's general character, and upon the faith of knowledge thus obtained he had sold Picard a part of the very goods levied on by defendants' attachment. The defendants objected to the said testimony of Dickinson as to the reputation of said Picard ; but the court overruled the objection, and permitted the testimony to go to the jury, and defendants excepted. Other witnesses testified, on the part of plaintiff, that the reputation and credit of said Picard were good before defendants' attachment issued ; and it also appeared that said Picard owed mercantile debts, contracted in the course of his business previous to said attachment, which were due and unpaid when defendants' said attachment issued. Other testimony was given to the jury by both plaintiff and defendant ; but, as the same is not material to this bill of exceptions, it is omitted."

Among other matters, the defendants requested the court to charge the jury, that the affidavit itself is to be considered by them as evidence in favor of defendants ; which charge the court refused to give. and the defendants excepted."

The assignments of error are as follows :

" 1. The court erred in refusing defendants' motion to strike out particular allegations in both counts of the declaration.

" 2. In overruling the several demurrers to the declaration.

" 3. In refusing to suppress plaintiff's depositions on motion.

" 4. In striking out defendants' plea, and in allowing a new declaration after issue joined and evidence taken.

" 5. In admitting as evidence, under the pleadings, the affidavit and attachment issued by defendants.

" 6. In allowing parol evidence to vary and contradict the record of said attachment and affidavit.

" 7. In allowing the witness Webb to relate the conversation between defendant and M. Forcheimer.

" 8. In allowing the attachment of M. Forcheimer, its levy, &c., to go to the jury.

" 9. In allowing the testimony of Dickinson, as to the reputation of plaintiff, to go to the jury.

" 10. In refusing the charge asked by defendants."

JNO. T. TAYLOR, for the appellants.

A. R. MANNING, with whom was WM. M. BROOKS, *contra.*

GOLDTHWAITE, J.—In the case of the Planters and Merchants' Bank v. Willis & Co., 5 Ala. 770, it was held by this court, that the amendment of the pleadings, at any time before the case was submitted to the jury, was a matter purely within the discretion of the court, and for that reason was not revisable here. This disposes of the question presented by the fourth assignment of error.

The affidavit on which the attachment was founded, and the allegations in relation to the making of the same, are set out in the declaration only by way of inducement—not as a statement of the injury, but simply as a statement of the circumstances under which the injury was committed (1 Ch. Pl. 326) ; and although it might have been omitted, and the declaration still have been good, no prejudice could result to the defendants from not striking it out. So, also, as to the allegation of injury to the feelings : whether this is one of the consequences resulting from the suing out of the attachment, which the jury could legitimately take into consideration, it is not necessary now to decide ; for, if they could not, still no prejudice could result to the defendants from the insertion of it, as the plaintiff could derive no right to recover for consequences which could not legally enter into the damages, although they were stated in the declaration.

In relation to the averments as to the loss of credit and business : we think they were proper, as one of the natural consequences of suing out an attachment against a merchant, on the ground of fraud, would be to affect his credit and business injuriously (Donnell v. Jones, 13 Ala. 490) ; and as injuries of this character might legitimately be considered by the jury, they were not improperly inserted in the declaration. There was no error prejudicial to the defendants, in overruling the motion made to strike out of the first count the allegations to which we have referred.

What we have said in relation to the action of the court below on the motion to strike out, applies to the demurrer to the first count. The affidavit was not of the *gist* of the action ; it might be entirely struck out, and a good cause of action remain upon that count.

Neither was there any error in refusing to suppress the depositions which had been taken before the filing of the amended declaration. If the issue was substantially varied— if the testimony required to sustain the last issue was different from that which was necessary to sustain the first, or if any portion of the deposition was inapplicable, under the changed state of the pleadings, by bringing it to the notice of the court, the rights of the defendants could have been guarded. But this was not done—no specific objection was made to the depositions, and no ground or reason assigned for their suppression, except that they were taken before the amended declaration was filed. If, as we have said, the issue was substantially the same, there was no reason for the parties incurring the trouble, expense, and delay consequent upon a re-taking; and if not, the party should have shown that they were inapplicable to the issue as then made up.

It appears from the record, that on the trial the plaintiff offered in evidence an affidavit and writ of attachment, which corresponded in all respects with the affidavit and attachment described in the declaration, except that it was uncertain whether the day of the month on which they bore date was the 25th or the 26th, the figures 5 and 6 having both apparently been written and blended together. In connection with this testimony, the plaintiff offered the clerk of the court who issued the attachment, who testified, that the figures were intended for 25,—that the attorney had by mistake written 26, and that he corrected the error by writing the true date. This evidence, in connection with the affidavit and attachment, was permitted to go to the jury, and the action of the court in this respect is assigned for error. Upon general principles, we should entertain no doubt, where a writing of any sort is obscure from the manner in which it is written, that parol evidence would be admissible to decipher it. But there is no want of authority directly to the point. The question was decided, more than a century since, by Sir Joseph Jekyll, Master of the Rolls, in Masters v. Masters, 1 Pr. Wms. 422. There the legacies in a will being written "blindly and hardly legible", it was referred to a master to examine and report what those legacies were, "the master to be assisted with such as understood the art of writing." So,

in Norman v. Morrell, 4 Ves. 769, where a legacy was written in figures, and the question was whether it was £300 or £800, it being insisted that the first figure was originally 3, but had been altered to an 8 by drawing the pen over it, and extending the lower and upper parts of the figure towards the centre ; an issue was directed to ascertain the fact. Goblet v. Beechly, 3 Sim. 24, is to the same point, and also Reman v. Hayward, 2 Ad. & El. 666, and Armstrong v. Burrows, 6 Watts.

In relation to the conversation which occurred between the witness Webb and the defendant Morrison, it is to be observed, that the issue was, whether the defendants wrongfully and maliciously sued out the attachment, and caused it to be levied on the property of the appellee ; and that under this issue, any evidence which tended to establish the fact that either of the appellants procured the attachment to be issued, or levied, would be relevant. The admission made by one of them is, in effect, that he had agreed to find the property of the plaintiff to be levied on, if a third person, whose attachment was first in the sheriff's hands, would yield the preference to the attachment for the suing out which the suit was brought, and which was subsequently levied on the property pointed out by Morrison. This, at least, tended to show that he was instrumental and active in procuring the attachment in favor of himself and the other appellants to be levied, and was directly involved in the issue ; and as it was admissible for that purpose, it was not error that it was received by the court for another, as the other party could have limited its effect by asking the necessary instructions.—Cook & Scott v. Parham, 24 Ala. 21.

As to the admission of the attachment and levy in favor of Manuel Forcheimer, it may be conceded that the defendants could not be held responsible in the present action for the part taken by one of them in causing that attachment to be levied. But the record shows that the attachment in favor of the appellants had been offered, and that from its return it appeared that the goods levied on had first been taken upon the other attachment, which therefore had the prior lien. Upon this state of facts, the appellants might have urged, in mitigation of damages, that the goods taken by their attach-

ment had been first taken upon another in favor of a different party ; and to rebut any inference prejudicial to them arising from this circumstance, it would have been proper for the appellee to show that the property thus taken was more than sufficient to satisfy the attachment first levied ; and the initiatory step would have been the introduction of it and the levy.—Cuthbert v. Newell, 7 Ala. 457.

In relation to the action of the court in admitting the testimony of the witness Dickinson : we incline to the opinion, that in actions like the present, proof as to the general credit or reputation of the plaintiff would not be admissible, until it was assailed.—Rodrigues v. Tadmere, 2 Esp. N. P. C. 720 ; 2 Ph. Ev. 258. But in the present case, the record shows that the credit and reputation of the plaintiff was put in issue by the evidence. As, therefore, it was competent for the witness to speak as to his reputation, and his testimony was directed to that point, it was not error for the court to overrule a general objection. Evidence as to character was admissible, and if it was supposed that the witness had shown from his examination that he was not qualified to give evidence as to the fact in question, the mind of the court should have been directed to it by a specific objection on that ground. The court is not bound to hunt for the particular ground on which a general objection may be sustained under such circumstances.—Wallis v. Rhea, 10 Ala. 451 ; Milton v. Rowland, 11 ib. 732 ; Donnell v. Jones, 13 ib. 490.

Our conclusion, upon the whole record, is, that the judgment must be affirmed.