ATLANTA & ST. ANDREWS BAY RAILWAY COMPANY, A COR-
PORATION, *Plaintiff in Error*, v. G. M. THOMAS AND A. C.
THOMAS, COPARTNERS AS THOMAS BROS. COMPANY, *De-*
*fendants in Error.*

1.  Actions *ex contractu* may be maintained only in accordance
    with the lawful rights and interests of the parties as they ap-
    pear by the contract.

2.  Where the rights and interests of the parties are definitely
    and clearly stated the terms of the contract fairly interpreted
    should control, for it must be assumed that the intent of the
    parties is as it is distinctly and positively expressed by them.
    If the language used is ambiguous the real intent of the par-
    ties should be ascertained and it may be shown in an appro-
    priate way when such showing is not inconsistent with the
    express terms and purpose of the contract.

3.  Even though a contract be in form joint in its obligations, if
    the real rights and interests of the obligees among themselves
    be several and not joint, actions may be maintained severally
    by the obligees as their rights and interests appear, when the
    express terms and purpose of the contract are not in sub-
    stance thereby violated or disregarded.

4.  In ascertaining the intention of the parties and indetermin-
    ing whether the rights and interests of covenantees are in
    reality joint or several, the subject matter of the contract, the
    language used, the purpose designed, the consideration fur-
    nished and the circumstances that induced the making of the
    contract may be considered.

5.  Where the consideration furnished by the obligees is several
    and not joint the interests of the obligees may *prima facie* be
    regarded as several and not joint if other features of the con-
    tract do not clearly conflict.

6. A covenant to locate a station and depot at a stated point on a railroad "that the interest of all parties may be best subserved," is not inconsistent with separate interests of the obligees, but it comports with the existence of distinct rights to maintain actions for the redress of injuries resulting proximately from a breach of the covenant as the interests of the obligees under the contract may appear.

7. The interests and rights of action under a contract are not joint where the obligees may suffer separate and distinct but unascertained pecuniary injuries from a breach of the contract.

8. Where a railroad company has accepted the benefits of a contract granting a right of way and has entered upon the possession and use of the right of way, it cannot raise the question of the authority of one who executed the contract in its name.

9. While a right of way and depot site for a common carrier railroad company may be secured by condemnation proceedings, and the amount to be paid therefor would be the just value of the lands taken, yet the parties may contract for a right of way and depot grounds, and they are entitled to all the legitimate benefits of a valid contract.

10. Under the statute an agreement may be made for the location of a railroad depot at a particular point on the line of the road, in return for a right of way.

11. The damages recoverable for a mere breach of a contract are not such as are arbitrary or unreasonable, but such as are compensatory only for losses proximately resulting from the breach where the losses are capable of reasonably certain ascertainment and may fairly and reasonably be considered, either as arising naturally, *i. e.* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. If unusual results are contemplated they should be provided for in the contract.

12.  To warrant a recovery of substantial damages the losses complained of must have actually and proximately resulted from the breach of the contract; they must be of such a nature that they should reasonably have been contemplated by the parties as a probable result of a breach of the contract; and the amount of the losses must be capable of reasonably certain ascertainment, and not remote, conjectural, contingent or speculative.

13.  Losses that are the necessary result of a breach of contract or duty are presumed to have been contemplated by the parties and may be recovered under a general allegation of damages without being separately pleaded. Losses that naturally and probably, but not necessarily result may be recovered as special damages, but they should be specifically pleaded.

14.  Where a railroad station has not been located on land as agreed, and the contract apparently did not contemplate a depreciation in the value of the land if the station was not located as agreed, damages for losses incurred by a depreciation in the value of adjacent land may not be recovered, as such depreciation does not necessarily or naturally result proximately from the mere failure to locate the station as agreed, and there appears to be no reliable basis from which to determine with any degree of certainty the amount of the depreciation.

15.  Reasonable and just compensatory damages may be recovered for losses actually and proximately caused by the breach of the contract to locate a station and depot at a certain point on a railroad line, such as the expense of hauling to a more distant point and the failure of the lands near the place where the station was agreed to be located to advance in value, if the character of the losses is such that they fairly should have been contemplated by the parties as a natural and probable proximate result of the breach, and the amounts of the losses are capable of reasonably certain ascertainment.

16.  Remote, speculative or excessive damages should not be allowed.

This case was decided by Division A.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Price & Lewis* and *W. B. Farley,* for Plaintiff in Error;

*Paul Carter* and *C. L. Wilson,* for Defendants in Error.

WHITFIELD, C. J. — On September 25th, 1909, an amended declaration was filed in the circuit court for Jackson county, Florida, by the defendants in error, in which it is in substance alleged that about October, 1906, the railroad company was constructing a line of railroad from Dothan, Alabama, passing through Jackson county, Florida, to Panama City, Florida; that the railroad company desired to secure a right of way over certain lands owned by plaintiffs and Julia L. Thomas; that G. M. Thomas resided on Section 12, Tp. 2 N. R. 12 W., at Compass Lake in Jackson county, Florida; that plaintiffs under the name of Thomas Bros. Company, owned and operated at Compass Lake, Florida, a saw mill and also engaged in the production of naval stores; that it was necessary and practically indispensable to the profitable conduct of each their said businesses, and the convenience of others thereabout residing, that a depot and station should be built and constructed at Compass Lake, Florida; that a portion of the lands over which the defendant wanted a right of way was the exclusive property of said Julia L. Thomas, and the defendant was not able to obtain from her the desired right of way over her lands; that said Julia L. Thomas is the mother of plaintiffs, and the defendant negotiated with plaintiffs as partners aforesaid to secure for defendant the right of way across the

lands of said Julia L. Thomas, and over lands owned by plaintiffs, some severally and some as partners; that Julia L. Thomas was not interested in or the owner of lands at or near Compass Lake, Florida; but the lands were the property of the plaintiffs as hereinbefore mentioned; that a contract granting the right of way was entered into by said Julia L. Thomas and plaintiffs with defendant "for and upon the consideration of the erection at Compass Lake, Florida, on the land at the place described of a full station, a commodious depot, fully sufficient in size and extent to handle and accommodate all the passengers and freight business offered said defendant at said station. The said contract was made and entered into without any further consideration in the premises to the said Julia L. Thomas, and was for the benefit exclusively of the plaintiffs;" that defendant has availed itself of the contract in every particular, entered upon, and still continues to use and occupy the said lands or a greater part of them, for its right of way, and has built its railroad thereon; that the line of railroad has long since been completed and is in operation, but defendant has not complied with its contract and has broken it in this: "that it has utterly refused and failed, and still fails and refuses to build, construct and maintain the station and depot as provided in said contract;" that "plaintiffs have been compelled to construct and build a road to a point one and one-half miles distant from their place of business at Compass Lake aforesaid, where defendant has provided some rude and inadequate facilities for receiving and discharging freight; that said road was constructed at an expense of $100.00 to plaintiffs;" "that the place at which said station and depot was to have been was within two hundred yards or thereabout to plaintiffs' mill and other place of business, but for want of facilities and failure to provide said facilities

the said plaintiffs have been compelled to haul all the products of the said saw-mill and naval stores and other products shipped by them to said more distant point where defendant has provided, as aforesaid, rude and inadequate facilities as aforesaid; and they have also been compelled, for reasons aforesaid, to haul from said more distant point all freight received by them in their said business, causing additional expense of $500.00 by inconvenience, annoyance and delay to said plaintiffs; * * * that one of the inducements to them and to the said Julia L. Thomas aforesaid to make and enter into the said contract, * * * was that they the plaintiffs as a firm, and as individuals were the owners of the said real estate at or near Compass Lake, Florida, and such facts were, at and before the time of entering into the said contract aforesaid, * * * well known to the defendant, and were in contemplation of all parties to said contract at the time of making of same; and the construction of said depot and station would have greatly added to the value of said plaintiffs' land, but by reason of failure of said defendant to comply with its contract and by its breach of the same, the said plaintiffs have been greatly injured and damaged in this,—the said lands have greatly deteriorated in value in at least in the sum of $1,000.00; that the said lands have not advanced in value as they would have advanced if said station and depot had been built by said defendant, in accordance with said contract, said lands of plaintiffs would have advanced in value to the extent of five hundred dollars. * * * Wherefore, plaintiffs sue and claim $10,000.00."

The contract made a part of the declaration is as follows:

27 –Vol. 60.

"State of Florida,
County of Jackson.

Know all Men by These Presents, That the Atlanta &
St. Andrews Bay Railway Company, and Mrs. J. L.
Thomas, (widow) G. M. Thomas and his wife, and A. C.
Thomas and his wife, have this day entered into a contract,
and the terms of the same are as follows:

1st.   For and in consideration of the covenants, under-
taking and conveyance hereinafter made in this contract
on the part of Mrs. J. L. Thomas, a widow, G. M. Thomas
and his wife, and A. C. Thomas and his wife, to the
Atlanta & St. Andrews Bay Railway Company, the said
Atlanta & St. Andrews Bay Railway Company does hereby
promise and agree to build its line of railroad from Cotton-
dale in Jackson county, Florida, to Panama City, on St.
Andrews Bay, in Washington county, Florida, over and
across the lands of said Mrs. J. L. Thomas, G. M. Thomas
and A. C. Thomas as the same is now located by survey
over their said lands, to-wit:   Northwest quarter of the
southwest quarter of sec. 6, township 3, range 13; north-
east quarter of the southwest quarter of section 1, town-
ship 2, range 12; southeast quarter of the southwest quar-
ter of section 1, township 2, range 12; northeast quarter
of northwest quarter of section 12, township 2, range 12;
southeast quarter of the northwest quarter of section 12,
township 2, range 12; northeast quarter of the southwest
quarter of section 12, township 2, range 12; southeast
quarter of the southwest quarter of section 12; township
2, range 12; southwest quarter of the southwest quarter of
section 12, township 2, range 12, in Jackson county, Flor-
ida.   And to locate and establish at Compass Lake a full
station on its line of railroad as now located, and build
and erect at said station a commodious and convenient
depot fully sufficient in size and extent to handle and ac-

commodate all the passengers and freight business offered said railway company at said station; and the said station and depot shall be located on Sec. 12, T. 2 N of R. 12 W., that the interest of all parties hereto may be best subserved.

2nd. For and in consideration of the undertaking and covenants in paragraph one of this contract, and the further sum of one dollar on the part of the said Atlanta and Saint Andrews Bay Railway Company to the said Mrs. J. L. Thomas, a widow, G. M. Thomas and his wife, and A. C. Thomas and his wife, the said Mrs. J. L. Thomas, a widow, G. M. Thomas and his wife, A. C. Thomas and his wife, do hereby bargain, sell and convey, enfeoff and confirm unto the said Atlanta and Saint Andrews Bay Railway Company the following lands, to-wit: One tract or parcel of land 100 feet wide and extending in length over and across the following lands, to-wit: Northwest quarter of the southwest quarter of section 6, township 3, range 13; northeast quarter of the southwest quarter of section 1, township 2, range 12; southeast quarter of the southwest quarter of section 1, township 2, range 12; northeast quarter of the northwest quarter of section 12, township 2, range 12; southeast quarter of northwest quarter of section 12, township 2, range 12; northeast quarter of the southwest quarter of section 12, township 2, range 12, southeast quarter of the southwest quarter of section 12, township 2, range 12; southwest quarter of the southwest quarter of section 12, township 2, range 12, in Jackson county, Florida; said tract or parcel of land being a tract or parcel of land fifty feet wide over and across said lands on each side of the center line of survey locating the line of railroad of the said Atlanta and Saint Andrews Bay Railway Company over and across said lands. Also, one tract or parcel of land 100 feet wide

and 3000 feet long for terminal purposes, to be hereafter located immediately next to and adjoining said foregoing conveyed right of way at said station and depot at Compass Lake on either side of the foregoing right of way as said railway company may choose, 1500 feet of same shall be north and 1500 feet shall be south of the said depot at Compass Lake. All timbers reserved to parties of first part.

To Have and To Hold the same to the said Atlanta and Saint Andrews Bay Railway Company, its successors, legal representatives and assigns forever.

Entered into in duplicate, and dated at Cottondale, Florida, on this the 15th day of October, A. D., 1906.

ATLANTA AND SAINT ANDREWS
BAY RAILWAY COMPANY,
Per *B. G. FARMER* (L.S.)
Its Attorney.

Attest:
*Hattie Robertson,*
as to B. G. Farmer.
*Bryant Scott; L. B. Smith;*
as to G. M. Thomas & his wife.
*W. T. Graves; J. W. Hinson;*
as to A. C. Thomas & his wife.
*W. T. Graves; J. W. Hinson;*
as to J. L. Thomas."

| | |
|---|---|
| G. M. THOMAS | (L.S.) |
| L. L. THOMAS | (L.S.) |
| A. C. THOMAS | (L.S.) |
| B. L. THOMAS | (L.S.) |
| her | |
| J. L. X THOMAS | (L.S.) |
| mark | |

A demurrer to the declaration was interposed.

The grounds of demurrer insisted on are in substance that the covenant sued on is joint and all the joint obligees

are not parties plaintiff, and that the authority to execute the contract for the railroad company does not appear. The demurrer was overruled, pleas were entered and at the trial the plaintiffs recovered a judgment for damages. On writ of error the overruling of the demurrer to the declaration is among the errors assigned. The demurrer is addressed to the allegations of the declaration and not to the contract. If the contract made a part of the declaration as the basis of the action does not conclusively show the rights of the obligee to be joint and not several, and it does not appear that the obligee not made a party plaintiff has an interest in this cause of action, the ground of the demurrer that she is a necessary party plaintiff is not well taken.

Actions *ex contractu* are provided by law for the enforcement or redress of valid contracts as they are made. Such actions may be maintained only in accordance with the lawful rights and interests of the parties as they appear by the contract. The province of the court is not to make or to change a contract for the parties, but to ascertain and give effect to the valid intent of the contracting parties. Where the parties make a contract that is joint and not several in its obligations, an action for its breach should be by all the joint obligees who are capable of being plaintiffs. If a joint obligee is dead the action should be brought by the survivors. Where for any valid reason a joint obligee is not a plaintiff in an action to enforce or redress the joint right or interest under the contract, the failure to make such party a plaintiff should be sufficiently accounted for in the proceedings or the action will fail on appropriate demurrer unless a valid statute provides otherwise. Where the rights and interests of the parties are definitely and clearly stated the terms of the contract fairly interpreted should control, for it

must be assumed that the intent of the parties is as it is distinctly and positively expressed by them. If the language used is ambiguous the real intent of the parties should be ascertained and it may be shown in an appropriate way when such showing is not inconsistent with the express terms and purpose of the contract. Even though a contract be in form joint in its obligations, if the real rights and interests of the obligees among themselves be several and not joint, actions may be maintained severally by the obligees as their rights and interests appear, when the express terms and purpose of the contract are not in substance thereby violated or disregarded. In ascertaining the intention of the parties and in determining whether the rights and interests of covenantees are in reality joint or several, the subject matter of the contract, the language used, the purpose designed, the consideration furnished and the circumstances that induced the making of the contract may be considered. Where the consideration furnished by the obligees is several and not joint the interests of the obligees may prima facie be regarded as joint and not several, if other features of the contract do not clearly conflict. See 9 Cyc., 703 *et seq.;* 30 Cyc., 106; 15 Ency. Pl. & Pr., 528, *et seq.;* 2 Page on Contracts, section 1142; 1 Saunders, 153. These principles of the common law are in force in this State by virtue of the statute which adopts the common law of England that is of a general nature and is not inconsistent with the constitution and statutes of the United States and this State. Sec. 59 Gen. Stats. of 1906.

The express covenant here considered is that, in consideration of the conveyance of the right of way over the lands alleged to have been owned in part by Julia L. Thomas severally, and in part by G. M. Thomas and A. C. Thomas severally and as partners, the railroad company

shall "locate and establish at Compass Lake a full station on its line of railroad as now located, and build and erect at said station a commodious and convenient depot fully sufficient in size and extent to handle and accommodate all the passengers and freight business offered said railway company at said station; and the said station and depot shall be located on Sec. 12, T. 2, N. of R 12 W., that the interest of all parties may be best subserved."

It is alleged that the location of the station and depot as agreed was necessary to the profitable conduct of plaintiffs' business and to the convenience of others thereabouts residing. The lands over which the right of way was secured were not owned jointly by the covenantees, though the conveyance of the right of way over the lands of all three of the obligees was expressly made a consideration for the covenant as to the station and depot, and the covenant is to all three of the grantors of the right of way. The consideration for the covenant sued on is not in its nature joint and the interests accruing to the covenantees under the contract are apparently not joint. It appears that Julia L. Thomas conveyed the right of way over her separate lands only at the instance of her sons and apparently to secure the location of the station and depot at the agreed point. As it is alleged that Julia L. Thomas was not interested in or the owner of the lands at or near Compass Lake where the station and depot were to be located, her interest in the location of the station in view of the allegations, may be largely one of convenience as a nearby resident, and her interest may or may not be similar in kind or degree to that of the other covenantees; but her interest as a land owner and resident is manifestly separate and distinct from that of G. M. and A. C. Thomas as partners asserted in this action, since it is alleged she

has no rights in the lands near Compass Lake, and she is not a member of the plaintiff firm.

The covenant to locate a station and depot at a stated point "that the interest of all parties may be best subserved," is not inconsistent with separate interests of the obligees, but it comports with the existence of distinct rights to maintain actions for the redress of injuries resulting proximately from a breach of the covenant as the interests of the obligees under the contract may appear. The interests and rights of action under a contract are not joint where definite and separate amounts are covenanted to be paid to the obligees severally, though the covenant is in form joint to all covenantees, for the reason that the real intent is disclosed by the interests of the parties as they are in fact given by the contract. Gray v. Johnson, 14 N. H., 414; 30 Cyc., 107. The same principle is applicable where the obligation is in form joint, but the obligees may as in this case suffer separate and distinct but unascertained pecuniary injuries from a breach of the covenant. While the covenant may be in form joint, yet by reason of the subject matter, the character of the consideration and the purpose of the contract, the interests of the parties are not joint and the causes of action accruing to the obligees may be several; and an action by two of the obligees to redress injuries caused by a breach of the covenant in which injuries the other obligee has no interest may be maintained.

The defendant railroad company having accepted the benefits of the contract and entered upon the possession and use of the right of way, it cannot now raise the question of the authority of the one who executed the contract in its name. Louisville, N. A. & C. Ry. Co. v. Sumner, 106 Ind. 55, 5 N. E. Rep., 404; Taylor v. Florida East Coast R. Co., 54 Fla., 635, 45 South. Rep., 574, 16 L. R. A.

(N. S.), 307, 127 Am. St. Rep., 155, 14 Ann. Cas., 472, 50 Am. & Eng. R. R. Cas. (N. S.), 289. There was no error in overruling the demurrer to the declaration.

While the right of way for the railroad track and the necessary land for its station and depot might have been secured by condemnation proceedings under the statute, and the amount to be paid would be the just value of the lands taken, yet the parties had a right to contract for the right of way and station grounds, and they are entitled to all the legitimate benefits of a valid contract. Under the statute an agreement may be made for the location of a railroad depot at a particular point on the line of the road, in return for a right of way. Such a contract may be specifically enforced where superior rights of the public do not intervene. Taylor v. Florida East Coast R. Co., 54 Fla., 635, 45 South. Rep., 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep., 155, 14 Ann. Cas., 472, 50 Am. & Eng. R. R. Cas. (N. S.), 289. No question of the rights of the public is presented here. The damages recoverable for a mere breach of a contract are not such as are arbitrary or unreasonable, but such as are compensatory only for losses proximately resulting from the breach where the losses are capable of reasonably certain ascertainment and may fairly and reasonably be considered, either as arising naturally; *i. e.* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the same time they made the contract as the probable result of the breach of it. If unusual results are contemplated they should be provided for in the contract. See Hadley v. Baxendale, 9 Exch., 341; 3 Page on Contracts, sections 1574–5.

To warrant a recovery of substantial damages the losses complained of must have actually and proximately re-

sulted from the breach of the contract; they must be of such a nature that they should reasonably have been contemplated by the parties as a probable result of a breach of the contract; and the amount of the losses must be capable of reasonably certain ascertainment, and not remote, conjectural, contingent or speculative. Vaughan's Seed Store v. Stringfellow, 56 Fla., 708, 48 South. Rep., 410; Hall v. Western Union Tel. Co., 59 Fla., 275, 51 South. Rep., 819; Hodges v. Fries, 34 Fla., 63, 15 South. Rep., 682; Moses v. Autuono, 56 Fla., 499, 47 South. Rep., 925, 20 L. R. A. (N. S.), 350.

Losses that are the necessary result of a breach of contract or duty are presumed to have been contemplated by the parties and may be recovered under a general allegation of damages without being separately pleaded. Losses that naturally and probably, but not necessarily result may be recovered as special damages, but they should be specifically pleaded. Jacksonville Electric Co. v. Batchis, 54 Fla., 192, 44 South. Rep., 933.

The losses alleged to be the result of the failure to establish the station and depot at the agreed place are the expense of building a road to the station at a distant point, and the expense of hauling to and from the station at the distant point, and also a depreciation of the value of the lands where the station would have been located under the contract, and a failure of the plaintiffs' lands at the agreed point to appreciate in value because the station was not located as provided in the contract. The expense of building a road to the station as located and the expense of hauling to and from the station are losses that may have been actually and proximately caused by the failure to establish the station and depot on the plaintiffs' lands as agreed. The expenses thus incurred are losses of such a character that they should reasonably have been contem-

plated by the parties as a natural and probable if not a necessary result of the location of the station at a distant point instead of on the plaintiffs' lands as agreed. The amount of such losses may be ascertained with reasonable certainty from reliable evidence.

As the station was never located on the plaintiffs' lands, there appears to be no reliable basis from which to determine with any degree of accuracy or certainty the amount of the alleged injury to the plaintiffs in a *depreciation* of the value of the lands necessarily or naturally resulting proximately from the mere failure to locate the station on the lands as agreed. See Standard Supply Co. v. Carter, 81 S. C., 181, 62 S. E. Rep., 150, 19 L. R. A. (N. S.), 155 and note. Apparently a depreciation in the value of the lands does not necessarily follow a failure to locate the station on them, and no circumstances are alleged to show such a loss to be a natural and probable result of the breach of the contract that should have been contemplated by the parties. The fact that the plaintiffs were conducting their business on the lands does not necessarily indicate that the lands would *depreciate* in value because of a failure to locate the station thereon. This element of damage is apparently an unusual one, it is not provided for in the contract and it appears to be contingent, conjectural and speculative. It should have been eliminated in the pleadings, in the evidence and in the charges.

It may be shown with some degree of certainty by reliable evidence that the lands would have increased in value if the station had been located as agreed, therefore it cannot be said as matter of law that a failure of the land to appreciate in value was not a natural and probable result of the breach of the contract that should reasonably have been contemplated by the parties. It is

apparent that the contract contemplated an increase in the value of the lands. The measure of damages is the difference between the market value of the land with and without the station on it as agreed, making no allowance for a depreciation in the value of the land as of the date of the contract. See Louisville, N. A. & C. Ry Co. v. Sumner, 106 Ind., 55, 5 N. E. Rep., 404; Varner v. St. L. & C. R. Ry. Co., 55 Iowa, 677, 8 N. Rep., 634; Watterson v. Allegheny Valley R. Co., 74 Pa. St., 208; Louisville, A. & P. V. Electric Ry Co. v. Whipps, 118 Ky., 121, 80 S. W. Rep., 507, 4 Am. & Eng. Ann. Cas., 996, and notes, 36 Am. & Eng. R. R. Cas. (N. S.) 744; Yazoo & M. V. R. Co. v. Baldwin's Ex'rs., 78 Miss., 57 29 South. Rep., 763, 21 Am. & Eng. R. R. Cas. (N. S.), 479; Mobile & M. Ry. Co. v. Gilmer, 85 Ala, 422, 5 South. Rep., 138; 2 Sutherlands on Damages, section 576; 33 Cyc., 177.

Under the allegations of the declaration reasonable and just compensatory damages for losses actually and proximately caused by the breach of the contract in building a necessary road and in hauling to and from the distant depot, and in the failure of the plaintiffs' lands to appreciate in value, may be recovered if the character of the losses is such that they fairly should have been contemplated by the parties as a natural and probable proximate result of the breach, and the amounts are capable of reasonably certain ascertainment. The allegations of the declaration do not warrant any other redress. Remote, speculative or excessive damages should not be allowed. The amount of the judgment exceeds the special damages alleged in the declaration.

A further discussion of the many errors assigned does not appear to be necessary.

The judgment is reversed and a new trial granted.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER, and PARKHILL, J. J., concur in the opinion.